SHEWALTER, Respondent, vs. SHEWALTER, Appellant.

*May 25—July 1, 1948.*

52

For the appellant there was a brief by *Bassuener, Humke, Poole & Axel* of Sheboygan, and oral argument by *H. S. Humke* and *Paul Axel.*

For the respondent there were briefs by *Evrard & Evrard,* attorneys, *E. L. Everson* of counsel, and *Frank P. Cornelisen,* guardian *ad litem* for Linda Catherine Shewalter, all of Green Bay, and oral argument by *Mr. Everson, Mr. Raymond E. Evrard,* and *Mr. Cornelisen.*

HUGHES, J.   Both parties are residents of Green Bay, Wisconsin.   In 1944, the defendant was in the military service stationed in California.   In January or February the plaintiff visited the defendant in California and they became engaged.   In April she again visited him in California and they decided to be married.   She was of the Catholic faith and he of the Methodist.   They called upon a Catholic priest who refused to marry them unless defendant would take a course of instructions.   Wishing to be married immediately, they consulted a Methodist minister, who married them on

April 13, 1944. They lived together intermittently in California and Green Bay until the defendant went overseas in late 1944 or early 1945. A child was born June 2, 1945, which plaintiff caused to be baptized in the Catholic faith.

It is alleged that they concealed from the plaintiff's parents the fact that they had not been married by a Catholic priest until the defendant was discharged from service in January of 1946.

The plaintiff alleged in her complaint that the defendant had agreed before the marriage to permit any children to be brought up as Catholics, but that when he was informed of the child's baptism he became angered and forbade her to take the child to church and threatened harm to the child if he learned that it so much as crossed the threshold of a Catholic church.

The defendant alleged in his counterclaim that the plaintiff had been carrying on a love affair with a married physician in Brown county before the marriage and that their association continued after the marriage; that this doctor was the father of the child born to the plaintiff on June 2, 1945.

On May 6, 1947, the plaintiff requested the court to try the issue as to cohabitation of the parties after the filing of the charges and countercharges to determine whether there had been condonation. There was discussion between counsel and court as to the right of the court to try that issue in chambers or to order spectators from the courtroom if tried in the court. One of the counsel for the defendant demanded that proof of the misconduct of the plaintiff be received in evidence as it had to be established before it could be condoned.

It is obvious that before a person can be said to have condoned certain conduct of his spouse he must have knowledge of its alleged existence. However, as here, where a man makes charges of the nature above recited, in public records, consortium after such pleadings are filed is all that need be

proved to constitute condonation.    It may well have appeared to the trial judge, therefore, that the sole purpose of this request was to afford an opportunity to embarrass the plaintiff more publicly.

The trial court properly ruled that no effort would be made to clear the courtroom upon the trial of the issue of condonation, and cautioned counsel that no reference be made in that proceeding to the issue of misconduct, which would be tried later.

The defendant was examined during the entire afternoon. The next morning, instead of resuming the hearing, the parties had a series of conferences with each other, and with the court. The defendant was present, as well as his father, who is himself a physician.    At these conferences there were produced by plaintiff exhibits showing that the blood type of the child and the defendant was consistent with parenthood; exhibits showing that the blood type of the physician accused by the defendant was such that he could not have been the father, that is, that his blood and the child's were inconsistent in type; also, reports of two Green Bay physicians showing that tests made by them indicated the accused doctor was sterile.    Moreover, the accused doctor stated he would testify that he had been sterile since an adverse turn of mumps some fourteen years earlier.    He also advised defendant and his father that he would submit to similar examinations by any two reputable physicians in Milwaukee whom Dr. Shewalter might select.

An agreement was thereupon reached that the plaintiff would move to reinstate her complaint and offer proofs of cruel and inhuman treatment, and that the defendant would offer no proofs in support of the allegations of the counterclaim. The stipulation was not reduced to writing and signed by the parties, but its terms were dictated in open court by the judge, and recited in part:

"That plaintiff submit her proofs, on her complaint, and if, in the opinion of the court, she is entitled to a divorce, then

the parties agree. . . . That the exclusive care and custody
of the child, Linda Catherine, born June 2, 1945, be awarded
to the plaintiff; that the findings of fact and judgment recite
that the issue of the marriage was one child, Linda Catherine
Shewalter, a daughter, born June 2, 1945; . . . the de-
fendant shall pay to the clerk of the circuit court in the usual
manner the sum of $25 per month for the support of the minor
child, Linda, until the sum of $1,000 is fully paid, whereupon
the duty of support and maintenance shall become the sole
obligation of the plaintiff, Margaret Catherine Shewalter.
. . .

"The parties recognize that a stipulation relieving the
father wholly or partially of the duty of support of a minor
child may be unenforcible, and in recognition of that situation
the plaintiff and her parents, William J. Shimek and Verna
Shimek, have agreed to give to the defendant, Kenneth
Howard Shewalter, an indemnity agreement" to save him
harmless beyond the $1,000 payment.

The court then dictated an agreement between the Shimeks
and Kenneth Shewalter, and continued:

"The parties should now indicate their consent to the fore-
going stipulation and indemnity agreement."

Thereupon counsel for the parties assented to the stipulation.

Court: "The court feels that under all the circumstances
and after having been quite well acquainted with all the details
of this case *and the proposed proof to be made* by the parties
that the stipulation should be and it hereby is approved."
(Italics ours.)

The plaintiff was put on the stand and testified to residence,
the marriage, and the fact that the suit was brought without
collusion, and was the only action for divorce pending between
the parties. The only other testimony offered by her was
as follows:

"*Q*. And there is living issue of said marriage one child,
Linda Catherine, born June 2, 1945, is that correct? *A.* Yes.
"*Q*. You heard some testimony that you were supposed
to have made a statement that ———— ———— was the

father of the child. Did you ever make such a statement? *A.* I did not.

"*Q.* Who is the father of the child? *A.* Kenneth Howard Shewalter.

"*Q.* You have divided the moneys between yourselves right at the beginning of the commencement of this action for divorce, is that correct? *A.* Yes, sir.

"*Q.* And you have entered into a stipulation of settlement subject to the approval of the court, is that correct? *A.* Yes, sir.

"*Q.* And you have had with reference to support, have you received any support money for the minor child since January 10, 1946? *A.* I have not."

The court then ordered judgment of divorce, awarded custody of the child to plaintiff, and approved the stipulation.

The defendant thereafter engaged his present counsel and perfected this appeal.

The questions raised upon this appeal are:

1. Did the divorce counsel comply with secs. 247.14 and 247.15, Stats?

2. Does the evidence sustain the finding of the court that the plaintiff is entitled to a divorce on the ground of cruel and inhuman treatment?

3. Does the corroborative testimony support the findings?

4. Can the trial court consider statements of counsel made in chambers, affidavits and motions of parties and proposed exhibits not offered in evidence, in granting a divorce?

5. Are unsworn statements, affidavits of parties in support of motions, or contents of an affidavit of one of the attorneys for the parties made subsequent to the granting of the judgment a part of the bill of exceptions in a divorce action?

Both appellant and respondent agree that these are the questions to be decided.

Because of the decision upon questions 2, 3, and 4, it will not be necessary to decide question 1.

With respect to the fifth question, if affidavits are offered and not objected to by opposing counsel, they may be made

a part of the bill of exceptions. Whether they are helpful on any issue depends upon their contents. Obviously, an affidavit that the official reporter's notes of the plaintiff's testimony were incomplete, and adding substantial proof of questions and answers actually put to the plaintiff upon the trial entitling her to a divorce, would be material. New proofs by way of affidavit not already a part of the record cannot be made a part of the record to strengthen it.

The evidence of the plaintiff offered upon the trial of the issues alleged in the complaint is set out in full because of its brevity and because a mere reading of it discloses that it is not sufficient to support the finding of the trial court.

The only corroborative proof offered was the testimony of the plaintiff's mother who, after testifying to the usual questions establishing residence of the plaintiff in Green Bay, was asked:

"*Q.* Do you know whether or not she has received any help, support, for the child since February 10, 1946? *A.* No, sir."

It appears that the divorce action was started April 27, 1946. The stipulation discloses that the parties divided their money after the commencement of the action and presumably the plaintiff made no demands upon the defendant. In addition, the grounds sought to be proved were cruelty, not non-support.

The remaining question is whether the trial court may take into consideration statements of counsel made in chambers, affidavits and motions of parties and proposed exhibits not offered in evidence, in granting a divorce. We think that this question must be answered in the negative. In conducting a conference with the hope of bringing about a reconciliation or a decent settlement in a case where the charges are scandalous and of a nature to bring publicity and shame upon

an innocent child, a trial court may become thoroughly satisfied that one of the parties is entitled to a divorce.

Here the defendant objects to the mother rearing the child in her faith, which would appear to be a display of paternalistic interest, and at the same time contends that the child is not his.

Counsel for respondent also points to the testimony of the defendant taken in open court. We are of the opinion that even if considered, there is not sufficient proof therein to establish plaintiff's grounds for divorce. Furthermore, it was distinctly understood by the trial court and all parties that his testimony was being taken upon the separate issue of condonation. In the absence of its being offered in connection with the proofs submitted on the divorce issue, it is not a part of the record which we can review.

We do not wish to be understood as condemning the exercise of discretion by a trial court in working out a settlement that will avoid a scandalous trial and dissolve a shattered marriage upon skeletal proof. We here hold only that the skeletal proofs offered in open court must be sufficient to support the findings which rest upon them.

Upon the new trial we suggest the need of disposing of the plaintiff's sworn allegations of consortium since the commencement of the action. If these are not negated by proof, it will be necessary to dismiss and commence a new action.

Without deciding the matter, we also recommend to the trial court and counsel careful consideration of the legality of a stipulation for future support of issue of the marriage, which may be subject to attack as straddling the question of paternity.

*By the Court.*—Judgment reversed and cause remanded for a new trial.

MARTIN, J., took no part.